IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

TUERE BARNES,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )            Civil Action No. 1:14-17631
                                       )
BART MASTERS, *et al.*,                )
                                       )
            Defendants.                )

## PROPOSED FINDINGS AND RECOMMENDATION

On June 4, 2014, Plaintiff, an inmate formerly incarcerated at FCI McDowell, and acting *pro se*,[1] filed his Application to Proceed *in Forma Pauperis* and Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Bart Masters, Warden of FCI McDowell; (2) Lieutenant Mouse; (3) Lieutenant Jansen; (4) Mrs. Rife, Unit Manager; (5) Mr. Mercardo, Correctional Counselor; (6) Ms. Pollard, Case Manager; (7) Ms. Austin, Secretary; (8) Ms. Saad, Associate Warden; (9) Donna Smith, Associate Warden; (10) Mr. Cananda, Correctional Officer; (11) Correctional Officer Manning; (12) Correctional Officer Lester; (13) Correctional Officer Goodman; (14) Correctional Officer Strafford; (15) Correctional Officer Young; (16) Lieutenant Davis; (17) Mr. Bowling, Food Service Adminstrator; (18) H. Williams, Regional Director at Mid Atlantic Regional Office; (19) J.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Boyd, Trust Fund Supervisor; and (20) Captain Martinez. (Document No. 2.) Plaintiff alleges that Defendants subjected him to verbal abuse, harassment, retaliation, and unconstitutional conditions of confinement. (Id., p. 4.) Plaintiff explains that upon arriving that FCI McDowell he began to file grievances concerning his placement in the medium security facility. (Id., pp. 6, 10 - 14.) Plaintiff alleges that he filed grievances concerning his placement at FCI McDowell because he is classified as a low security inmate. (Id.) As result of filing grievances, Plaintiff alleges that Defendants retaliated against him by subjecting him to verbal abuse, disciplinary infractions, and placing him the Special Housing Unit ["SHU"]. (Id.) Plaintiff asserts that the disciplinary infractions resulted in a loss of visitation and telephone privileges. (Id., pp. 7 and 17.) Plaintiff complains that during his 13 days of confinement in SHU he was denied access to the law library, could not speak with family, denied deodorant, and endured sleep deprivation. (Id., pp. 6, 15 - 16.) Plaintiff further complains that he and his cellmates were subjected to frequent cell searches wherein Defendants would pour coffee on family pictures, step on their beds, and "leave behind dirty footprints." (Id., pp. 6 and 18 - 21.) Plaintiff states that the foregoing created "altercations with Plaintiff and cellmates, and other inmates who blamed Plaintiff for the mistreatment." (Id.) Next, Plaintiff complains about the conditions of his confinement. (Id., p. 6.) Specifically, Plaintiff states that he was forced to sleep on dirty sheets for weeks, served expired food and cold bag lunches, exposed to second hand smoke, and forced to take cold showers. (Id., pp. 6, 21 - 22.) Plaintiff further complains that his laundry smelled of mildew, but Defendants refused to re-wash or change the clothing. (Id., pp. 27 - 28.) Third, Plaintiff states that Defendants incorrectly informed other inmates that Plaintiff was a snitch. (Id., pp. 6 and 20.) As relief, Plaintiff requests monetary damages. (Id., p. 25.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Male Custody

Classification Form" dated April 3, 2013 (Id., p. 31.); (2) A copy of Plaintiff's "Inmate to Staff Message" dated July 24, 2013 regarding his challenge to correctness of his Custody Classification Form (Id., p. 32.); (3) A copy of Plaintiff's "Request for Administrative Remedy" dated August 6, 2013, regarding his challenge to the correctness of his Custody Classification Form (Remedy ID No. 745398-F1) (Id., p. 33.); (4) A copy of Warden Masters' Response dated August 26, 2013, denying Plaintiff's request for Administrative Remedy regarding Remedy ID No. 745398-F1 (Id., p. 34.); (5) A copy of Plaintiff's Regional Administrative Remedy Appeal dated August 27, 2013 (Remedy ID No. 745398-R1) (Id., p. 35.); (6) A copy of Regional Director C. Eichenlaub's Response dated November 1, 2013 (Remedy ID No. 745398-R1) (Id., p. 36.); (7) A copy of Plaintiff's "Request to Staff" dated August 26, 2013, regarding his request for communication with his former co-defendant (Id., p. 37.); (8) A copy of Plaintiff's "Request to Staff" dated September 5 and 12, 2013, regarding his request for copies of the disposition of a BP-9 (Id., pp. 38 - 39.); (9) A copy of Plaintiff's "Request to Staff" dated September 10, 2013, complaining that his BP-8 was still in the possession of his Unit Manager instead of the Warden (Id., p. 40.); (10) A copy of an "Incident Report" dated September 18, 2013, charging Plaintiff was Insolence in violation of Prohibited Act Code 312 (Id., p. 41.); (11) A copy of an "Incident Report" dated September 19, 2013, charging Plaintiff was Insolence Towards a Staff Member in violation of Prohibited Act Code 312 (Id., p. 42.); (12) A copy of Plaintiff's "Administrative Detention Order" dated September 19, 2013 (Id., p. 43.); (13) A copy of Plaintiff's "Request for Administrative Remedy" dated October 8, 2013, challenging the Disciplinary Committee decision that Plaintiff was guilty of the charges contained in the Incident Reports (Remedy ID No. 753757-F1) (Id., pp. 44 - 45.); (14) A copy of a "Rejection Notice – Administrative Remedy" dated October 17, 2013 from the Administrative Remedy Coordinator at FCI

McDowell (Remedy ID No. 753757-F1) (Id., pp. 46 - 47.); (15) A copy of Warden Master's Response dated October 30, 2013, regarding Plaintiff's challenge to Incident Report dated September 24, 2013 (Remedy ID No. 753764-F1) (Id., p. 48.); (16) A copy of Warden Master's Response dated January  28, 2014, regarding Plaintiff's challenge to Incident Report No. 2494014 (Remedy ID No. 753757-F2) (Id., p. 49.); (17) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 7, 2013, regarding Remedy ID No. 753764-R1 (Id., p. 50.); (18) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated December 9, 2013, regarding Remedy ID No. 753757-R1 (Id., p. 50.); (19) A copy of Regional Director C. Eichenlaub's Response dated January 13, 2014, granting Plaintiff's appeal to the extent he was requesting a rehearing of his Incident Report (Remedy ID No. 753764-R1) (Id., p. 52.); (20) A copy of Plaintiff's "Male Custody Classification Form" dated September 21, 2013 (Id., p. 53.); (21) A copy of a Signed Statement from Inmate Tyrone S. Comegys (Id., p. 54.); (22) A copy of a Signed Statement from Inmate William McKinley Bailey (Id., p. 55.); (23) A copy of a Signed Statement from Inmate Vodie Goodman (Id., p. 56.); (24) A copy of a Signed Statement from Inmate Kenneth Woltz (Id., p. 57.); (25) A copy of a Signed Statement from Inmate Clarence Rebreay (Id., p. 58.); (26) A copy of Plaintiff's "Request for Administrative Remedy" dated October 14, 2013, alleging retaliatory acts by prison staff (Remedy ID No. 755680) (Id., pp. 60 - 67.); (27) A copy of a "Rejection Notice – Administrative Remedy" dated October 30, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 755680-R1 (Id., p. 68.); (28) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 7, 2013 regarding Remedy ID No. 755680-R1 (Id., p. 69.); (30) A copy of a "Rejection Notice – Administrative Remedy" dated November 4, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office

4

regarding alleged unprofessional and inappropriate conduct by BOP staff (Remedy ID No. 756207-R1) (Id., p. 70.); (31) A copy of a "Rejection Notice – Administrative Remedy" dated November 20, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 755680-R2 (Id., p. 72.); (32) A copy of Plaintiff's "Request for Administrative Remedy" dated October 10, 2015, regarding challenging in Incident Report (Remedy ID No. 756207-R1) (Id., p. 73.); (33) A copy of Plaintiff's "Request to Staff" dated September 17, 2013, regarding unprofessional misconduct by staff (Id., p. 74.); (34) A copy of a Signed Statement from Inmate El-Quan Aurdivant (Id., p. 75); (35) A copy of Plaintiff's "Request to Staff" Dated October 15, 2013, alleging that he was threatened by Officer Young and that Officer Manning closed the commissary before Plaintiff could make a purchase (Id., p. 76.); (36) A copy of Plaintiff's "Request to Staff" dated October 20, 2013, complaining of unprofessional conduct by staff (Id., p. 77.); (37) A copy of Plaintiff's "Request to Staff" dated October 25 and 31, 2013, complaining unprofessional conduct by Officer Lester (Id., pp. 78 - 79.); (38) A copy of Plaintiff's "Request to Staff" dated November 20, 2013, complaining that dish washing detergent was poured on his belongings in his cell (Id., p. 80.); (39) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" complaining that he had not been provided clean liens for 3-weeks and requesting clothing that does not smell like mildew (Document No. 2-1, pp. 1 - 5.); (40) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" complaining that the salad dressing contained "bacon fat" (Id., pp. 7 - 8.); (41) A copy of FSA John Bowling Response stating that the salad dressing contained only imitation bacon bits and did not contain bacon (Id., p. 9.); (42) A copy of Plaintiff's "Request for Administrative Remedy" dated December 3, 2013, complaining that the salad dressing contained "bacon fat" (Remedy ID No. 760478-F1) (Id., p. 10.); (43) A copy of

Warden Masters' Response dated December 19, 2013, to Remedy ID No. 760478-F1 (Id., p. 11.); (44) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated January 18, 2013 (Remedy ID No. 760478-R1) (Id., pp. 13 - 14.); (45) A copy of a "Rejection Notice – Administrative Remedy" dated January 29, 2014, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office (Id., p. 15.); (46) A copy of Plaintiff's letter to the Regional Director regarding the rejection of the appeal as untimely (Id., pp. 16 - 17.); (47) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated November 21, 2013, regarding complaints about receiving cold bag lunches for 6 days due to a prison lock down (Id., pp. 18 - 19.); (48) A copy of FSA John Bowling response dated November 26, 2013, to Plaintiff's "Inmate Request to Staff" regarding bag lunches (Id., p. 20.); (49) A copy of Plaintiff's "Request for Administrative Remedy" dated December 2, 2013, complaining of cold bag lunches (Remedy ID No. 760481-F1) (Id., p. 21.); (50) A copy of Warden Masters' Response dated December 19, 2013, to Remedy ID No. 760481-F1 (Id., pp. 22 - 23.); (51) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated January 18, 2014 (Remedy ID No. 760481-R1) (Id., p. 24.); (52) A copy of a "Rejection Notice – Administrative Remedy" dated January 31, 2014, regarding Remedy ID No. 760481-R1 (Id., p. 25.); (53) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated November 21, 2013, regarding his request for a comb (Id., p. 26.); (54) A copy of a Response to Plaintiff's "Inmate Request to Staff" stating that combs had been ordered and would be distributed upon receipt (Id., p. 27.); (55) A copy of Warden Master's Response to Plaintiff's Request from Administrative Remedy regarding a comb (Remedy ID No. 760484-F1) (Id., p. 28.); (56) A copy of Plaintiff's "Inmate Request to Staff" requesting a transfer to a new prison in Danbury, CT (Id., pp. 29 - 30.); (57) A copy of Ms. Rife's Response to Plaintiff's "Inmate Request to Staff" dated April 3,

2014, stating that Plaintiff's Case Manager was preparing the transfer request (Id., p. 31.); (58) A copy of Plaintiff's "Inmate Request to Staff" regarding receipt of credit for completing a social development class (Id., p. 32.); (59) A copy of a letter prepared by Plaintiff and received by the Mid-Atlantic Regional Office on April 18, 2014, wherein Plaintiff complained that staff was subjecting him to harassment (Id., pp. 33 - 37.); (60) A copy of an Administrative Remedy "Receipt" dated December 9, 2013, from the Administrative Remedy Coordinator at FCI McDowell regarding Remedy ID No. 760484-F1 (Id., p. 37.); (61) A copy of an Administrative Remedy "Receipt" dated November 20, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 753764-R1 (Id., p. 38.); (62) A copy of an "Extension of Time for Response - - Administrative Remedy" dated November 20, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 753764-R1 (Id., p. 39.); (63) A copy of an Administrative Remedy "Receipt" dated December 9, 2013, from the Administrative Remedy Coordinator at FCI McDowell regarding Remedy ID No. 760481-F1 (Id., p. 40.); (64) A copy of an Administrative Remedy "Receipt" dated December 30, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 753757-R1 (Id., p. 41.); (65) A copy of an "Extension of Time for Response - - Administrative Remedy" dated December 30, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 753757-R1 (Id., p. 42.); (66) A copy of an Administrative Remedy "Receipt" dated December 9, 2013, from the Administrative Remedy Coordinator at FCI McDowell regarding Remedy ID No. 760478-F1 (Id., p. 44.); (67) A copy of a letter from Plaintiff dated May 19, 2014, addressed to Congressman Nick J. Rahall complaining of harassment by prison staff (Id., pp. 44 - 47.); (68) A copy of Plaintiff's "Request for Transfer/Application of Management

Variable" dated April 17, 2014 (Id., p. 48.); (69) A copy of Plaintiff's "Male Custody Classification Form" dated February 26, 2014 (Id., p. 49.); (70) A copy of Warden Masters' Response to Plaintiff's "Request for Administrative Remedy" regarding a change in the time for access to a legal copier (Remedy ID No. 775976-F1) (Id., p. 50.); (71) A copy of Regional Director C. Eichenlaub's Response to Remedy ID No. 775976-R1 (Id., p. 51.); (72) A copy of a letter from the United States Department of Justice dated January 14, 2014, regarding Plaintiff's complaint of harassment (Id., p. 52.); and (73) A copy of a letter from the American Civil Liberties Union (Id., pp. 53 - 55.).

## **STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.    **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of

_____

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

10

relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin , 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal

v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds)(a Section 1983 action, citing numerous cases). The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: line"The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense

to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request

within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Based upon a thorough review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA concerning all his claims. Although Plaintiff started the exhaustion process, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. Plaintiff states that "most of the levels were never responded to, and the other ones were not accepted." To the extent Plaintiff contends that his failure to exhaust should be excused because prison staff failed to properly respond to his administrative remedies, the undersigned finds Plaintiff's claim to be without merit. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at

that level." 28 C.F.R. § 542.18. Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. To the extent Plaintiff argues that exhaustion should be excused because his remedies requests were rejected, the undersigned finds his claim to be without merit. A review of Plaintiff's numerous Exhibits reveals that several appeals to the Regional Office were rejected as improperly filed. Each "Rejection Notice," however, contained an explanation as to why the remedy was rejected. Plaintiff appears to have made no further attempts at exhaustion. It is well established that claims are precluded if not raised at all three levels of the administrative remedy process. Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010); also see 28 C.F.R. § 542.15(b)(2)(an inmate may not raise in an appeal issues not raised in the lower level filings). To the extent that Plaintiff claims that any further attempts at exhaustion would have been futile, his claim is without merit. The United States Supreme Court, however, has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[4] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception

---

[4]  Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]xhaustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

to the PLRA's exhaustion requirement."); <u>Jacocks v. Hedrick</u>, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claims.

**2.**     **Eighth Amendment**:

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other grounds</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. <u>See</u> <u>Farmer v. Brennan,</u> 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); <u>Trop v. Dulles</u>, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630

(1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

A.    *Verbal Abuse and Harassment.*

Plaintiff contends that Defendants violated his constitutional rights by accusing Plaintiff of being a "snitch" and verbally harassing him. (Document No. 2.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted or that his life was threatened by other inmates because of Defendants' statements. Plaintiff conclusory statement that his life was placed in jeopardy is insufficient. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendants' alleged reference to Plaintiff as a "snitch." Plaintiff's claim that Defendants should be liable due to the possibility that Defendants' reference could have resulted in Plaintiff's life being threaten by other inmates is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim

where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Finally, the verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**B.    *Conditions of Confinement.***

Plaintiff contends that the conditions of his confinement were cruel and unusual based upon the following: excessive noise; required to sleep on the same sheet for 3 weeks; served cold bag lunches for 6 days; required to take cold showers; and required to wear clothes that smelled of mildew. (Document No. 2.) In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Plaintiff claims that while he was temporary placed in segregation, he was deprived of sleep due to the excessive noise. Although sleep can constitute a

19

basic human need, Plaintiff fails to allege any sufficiently serious deprivation of his basic human need for sleep as to constitute an Eighth Amendment violation. See Murry v. Edwards County Sheriff's Dep't., 248 F.Appx. 993, 998 - 99 (10th Cir. Oct. 1, 2007)(finding that occasional disturbance of sleep by continual lighting, leading sometimes to mild physical symptoms, was not sufficiently serious to result in an Eighth Amendment violation); Nikirk v. Rodriquez, 129 F.Appx. 103, 104 (5th Cir. Apr. 20, 2005)(holding that the District Court properly dismissed inmate's claim as frivolous where inmate alleged an Eighth Amendment violation based upon a denial of sleep due to nighttime head-counts where inmate failed to allege serious physical or psychological damage); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(unpublished decision)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); Ajaj v. United States, 479 F.Supp.2d 501, 512 (D.S.C. 2007)(citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); Spivey v. Doria, 1994 WL 97756, * 11 (N.D.Ill.)(finding no constitutional violation where inmate alleged that the noise level caused him to lose sleep and made him irritable; reasoning that "federal courts are not the forums to determine proper lighting and noise levels in jails"); Hutching v. Corum, 501 F.Supp. 1276, 1293(D.Mo. 1980)(finding no constitutional violation despite all-night illumination and high noise levels at night, where inmates failed to allege "evidence indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems). Plaintiff's complaints of being required to sleep on the

same liens for 3 weeks and being provided clothing that smelled of mildew is insufficient to state a constitutional violation. See also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."). The conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. Although Plaintiff complains that he was provided cold bag lunches for six days, Plaintiff does not dispute that he was provided with food. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). Furthermore, Plaintiff fails to allege any injury resulting from the challenged conditions. Strickler, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury resulting from the conditions of confinement). Therefore, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.

C.    *Segregation.*

Plaintiff contends that his placement in segregation resulted in cruel and unusual

punishment prohibited under the Eighth Amendment of the United States Constitution. (Document No. 2.) The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied, Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." Sweet v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); see Sweet, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment by placing him in segregation for 13 days while he was being investigated for disciplinary rule violations. (Document No. 2.) The undersigned notes that Plaintiff's confinement in segregation was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of his placement in segregation, his allegations do not present a claim of constitutional magnitude for

which relief can be granted.

    **D.**    ***Visitation and Telephone Privileges.***

    Plaintiff contends that the restriction on his visitation and telephone privileges resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. In <u>Overton v. Bazzetta</u>, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 137-38, 123 S.Ct. 2162, 2170, 156 L.Ed.2d 162 (2003)(finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privilege were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

<u>Id.</u>, 539 U.S. at 137, 123 S.Ct. at 2170(citations omitted).

    In the instant case, Plaintiff alleges that he lost visitation privileges for 30 days and telephone privileges for 60 days as a sanction for violating Offense Code 312, Insolence. (Document No. 2, pp. 41 - 42.) Thus, Plaintiff's visitation and telephone privileges were suspended for a limited period of time. The Court finds that a 30-day suspension of Plaintiff's visitation privileges and a 60-day suspension of his telephone privileges as a means of effecting prison discipline, is not a dramatic departure from accepted conditions of confinement. <u>See</u> <u>Thomas v. Drew</u>, 365 Fed.Appx. 485, 488 (4th Cir. 2010)(no Eighth Amendment violation where

inmate's telephone privileges were suspended for more than 50 years as a sanction for "misuse of telephone"); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *10 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)(no Eighth Amendment violation where an inmate's visitation privileges were suspended for more than two-years following eleven major disciplinary convictions). Further, Plaintiff does not allege that he has suffered a significant injury or experienced an extreme deprivation of a basic human need. Although the suspension of Plaintiff's visitation and telephone privileges is restrictive, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

**3.**     **No Due Process Violation:**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to

24

the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

    **A.**    ***Liberty Interest in Placement into General Population.***

    Applying the principles set forth in Sandin, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[5] Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct.

---

[5] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

    ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled in part by Sandin, 515 U.S. 482-83, 115 S.Ct. 2293; Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)(citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976))(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. Accordingly, the undersigned finds that Plaintiff's claim is without merit.

**B.**    *Liberty Interest in Retaining Prison Privileges*.

To the extent Plaintiff alleges a liberty interest in retaining his visitation and telephone privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F.

Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to prison visitation or telephone privileges. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of *Sandin*, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in Sandin."); Principio v. McGinnis, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); Richardson v. Johnson, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); James v. Odom, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on

inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship); Ozolina v. Durant, 1996 WL 82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under Sandin, "there is no right to visitation protected by the Due Process Clause."); and White v. Keller, 438 F.Supp. 110, 114 (D.C.Md. 1997), aff'd, 588 F.2d 913 (4ᵗʰ Cir. 1978)("[T]here is no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining visitation and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit.

**4.    Retaliation Claim:**

Prison officials may not retaliate against inmates for their exercise of a constitutional right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); American Civil Liberties Union of Md, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(en banc)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

Plaintiff claims that prison officials retaliated against him for filing grievances.

Specifically, Plaintiff alleges that Defendants harassed him and filed two false incident reports against him because Plaintiff was filing grievances concerning his placement in the medium security facility. The Fourth Circuit, however, has recognized that inmates have "no constitutional right to participate in grievance proceedings." Adams, 40 F.3d at 75. Since Plaintiff has no constitutional right to participate in grievance procedures, he has failed to establish a claim of retaliation. See White v. Francis, 2008 WL 2705102 (N.D.W.Va. Jul. 9, 2008)(finding that "[b]ecause there is no constitutional right to file a grievance, retaliation against [plaintiff] for filing one does not meet the requirements of a retaliation claim"), aff'd, 325 Fed. Appx. 214 (4th Cir. 2009), cert. denied, 130 S.Ct. 1287, 2010 WL 250973 (2010); Alqam v. United States, 2008 WL 2945492, n. 8 (N.D.W.Va. Jul. 24, 2008)(finding that plaintiff failed to state a claim by alleging that he was transferred in retaliation for filing administrative grievances); Bane v. Virginia Dept. of Corrections, 2007 WL 1378523 (W.D. Va. May 8, 2007)(stating that because "there is no constitutional right to participate in grievance proceedings, [plaintiff] is barred from claiming that the transfer was made in retaliation to the exercise of a constitutionally protected right"). Accordingly, the undersigned finds that Plaintiff's claim of retaliation should be dismissed.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed in Forma Pauperis (Document No. 1), **DISMISS** Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: March 17, 2017.

Omar J. Aboulhosn
United States Magistrate Judge